UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

MENELIK SOLOMON, et al.,

    Defendants.

Case No. 2:22-cr-222(1)
Judge Edmund A. Sargus, Jr.

## OPINION AND ORDER

This matter arises on Defendant's Motion to Suppress.  (ECF No. 37).  The Court held a hearing on Defendant's Motion beginning at 1:30 P.M. on May 12, 2023.  For the reasons that follow, Defendant's Motion is **DENIED**.

### I.    Factual Background

The evidence in this case was presented to the court through exhibits attached to Defendant's motion, as well as an exhibit attached to the government's response.  (ECF No. 37, Exhibits A-F) (ECF No. 41, Exhibit 1).  No evidence was presented at the May 12 hearing, only argument.

On March 15, 2022, two City of Whitehall law enforcement officers were stationed in their police cruiser on the side of South Hamilton Road.  While in this position the officers, Frost and McGee, received a call, informing them that "he's rolling."  (ECF No. 37, Exhibit C-1, at 00:15).  This call prompted Officer Frost to begin driving toward the road.  (*Id*., at 00:20).  As he did so, the officers observed a Chevrolet Malibu traveling southbound down South Hamilton Road.  (ECF No. 37, Exhibit A, at 8).  The officers executed a stop on the vehicle.  Officers Frost

and McGee report the "traffic stop was conducted for illegal window tint and no working brake lights." (ECF No. 37, Exhibit A, at 5). Upon reaching the vehicle's side door, Officer Frost reported smelling "an odor of raw marijuana emitting from within the vehicle." (*Id*.). He made contact with the vehicle's sole occupant, the Defendant, and observed him to be hesitant. (*Id*.). Officer Frost requested, and was given, Defendant's wallet, in which he found a concealed carry license. (*Id*.). Discussion between Defendant and Officer Frost revealed Defendant was in fact carrying a weapon.[1] (*Id*.).

After a short interaction, Officer Frost ordered Defendant to exit the car and placed him in handcuffs. (*Id*.). The officers then sought, and were given, consent to search Defendant's person. (*Id*.). They found roughly $760 and seven cellular phones. (*Id*.). Officer Frost, along with Officer McGee, then proceeded to search Defendant's vehicle. (*Id*.). The officers did not have Defendant's consent but believed themselves to have probable cause. (*Id*.). The search revealed four additional cellphones, as well as marijuana residue, two firearms, a digital scale, a vacuum sealer, rubber bands, two large trash bags, and shipping and money transfer receipts. (*Id*.) (ECF No. 37, Exhibit B1, at 14:00). The officers also observed air fresheners and dryer sheets stuck into the car's air vents. (ECF No. 37, Exhibit A, at 5). Notably, the officers did not find any marijuana beyond the residue. (*Id*.). Officers Frost and McGee proceeded to seize this evidence, with McGee explaining to Defendant "[i]n our eyes it looks like um there's an involvement in some trafficking of drugs, marijuana." (ECF No. 37, Exhibit B-2b, at 00:45)

---

[1] The government points out, "O.R.C. § 2923.12 no longer requires those pulled over by law enforcement to affirmatively state that they have a CCW permit if there are firearms in the vehicle. That law went into effect on June 13, 2022. Prior to June 13, an individual pulled over was required to promptly inform law enforcement that there was a firearm in the vehicle." (ECF No. 41, at 3).

2

After searching Defendant's car and seizing the above-described evidence, Officer McGee tested the tint on the vehicle's window. (ECF No. 37, Exhibit A, at 8). The test revealed light transmittance of 17%, well below the 50% minimum. (*Id*., at 9) (*Id*., Exhibit B-2b, at 26:00). The officers also tested the vehicle's brake lights, which appeared to be operable. (ECF No. 37, Exhibit B-2b, at 7:20). Defendant was given a ticket for the window tint, a minor misdemeanor offense under Section 337.28 of the Whitehall Codified Ordinances, and a warning for the brake lights. (*Id*., Exhibit A, at 3). Defendant later paid the ticket. (*Id*.).

One week after the stop, on March 22, Detective John Slosser of the Whitehall Division of Police applied for a warrant to search each of the eleven seized cellphones. (ECF No. 37, Exhibit D). A warrant was issued the same day by Judge Jodi Thomas of the Franklin County Municipal Court. (*Id*., at 9). Upon searching Defendant's phones, officers found valuable evidence related to a large-scale drug dealing operation. (ECF No. 37, at 7). The evidence was used to investigate, charge, and indict Solomon. (*Id*.).

II.     **Law and Analysis**

Defendant seeks to suppress "all evidence seized from a traffic stop on March 15, 2022 by the Whitehall Division of Police" as well as "all evidence obtained under a March 22, 2022 Ohio state search warrant applied for by the Whitehall Division of Police and issued by Franklin County Municipal Court Jodi Thomas." (ECF No. 37, at 1). The March 22 search warrant authorized the search of eleven of Defendant's phones, seized during the March 15 traffic stop. (ECF No. 37, Exhibit D). The government opposes both requests. (ECF No. 41, at 1). The Court will decide the traffic stop and the search warrant suppression issues in turn. "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United*

*States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) (citation omitted). As described below, the Court **DENIES** both requests.

### a. Traffic Stop

Defendant maintains that suppression of all evidence seized from the March 15 traffic stop is warranted because "[t]he Whitehall police officers lacked reasonable suspicion to believe that Mr. Solomon was engaged in criminal activity, and lacked probable cause to believe that he committed a traffic violation." (ECF No. 37, at 1). Thus, Defendant argues, their initial stop, which led to the subsequent search, was unreasonable.[2] (ECF No, 37, at 10). The government does not contend that Officers Frost and McGee had a reasonable suspicion Defendant was engaged in criminal activity at the time they initiated the stop. However, it does argue that the officers had probable cause to believe Defendant had committed a traffic violation, which justified their decision to pull him over. (ECF No. 41, at 1). For the reasons described below, the Court concurs with the government.

A traffic stop is justified at its inception "when a police officer has reasonable suspicion of an ongoing crime or a completed felony or when he has probable cause to believe that a civil traffic violation has been committed." *Hoover v. Walsh*, 682 F.3d 481, 493 (6th Cir. 2012). Reasonable suspicion is "more than an ill-defined hunch"; it is "a particularized and objective basis for suspecting [a] particular person . . . of criminal activity." *Weaver v. Shadoan*, 340 F.3d

---

[2] Defendant does not argue that officers lacked probable cause to search his car once they stopped him. Such an argument would be futile, as it is uncontroverted that Officers Frost and McGee observed sufficient evidence to justify a search of his vehicle. Officer Frost reports smelling "an odor of raw marijuana," emanating from the car, observing Defendant's nervous disposition, and learning of Defendant's failure to inform the officers of a concealed firearm in the car. (ECF No. 37, Exhibit A, at 8). Based on just the smell alone, Officer Frost had probable cause to conduct a vehicular search. *See United States v. Lyons*, 687 F.3d 754, 769–70 (6th Cir. 2012). The subsequent search of Defendant's car revealed marijuana residue and two guns. (*Id*.). Rather than making this argument, Defendant challenges the officers' probable cause to stop him in the first place.

398, 407 (6th Cir. 2003) (quoting *Houston v. Clark Cty. Sheriff Deputy John Does 1–5*, 174 F.3d 809, 813 (6th Cir. 1999)). The probable cause standard is more demanding. *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016). An officer has probable cause when he has a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). To determine whether an officer had reasonable suspicion or probable cause to make a stop, the court must examine the totality of the circumstances. *Collazo*, 818 F.3d at 257; *United States v. Padro*, 52 F.3d 120, 123 (6th Cir. 1995).

"Probable cause for a traffic stop is established when 'an officer observes a motorist violate a traffic law.'" *United States v. Salas*, 820 F. App'x 405, 411 (6th Cir. 2020) (quoting *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020)). Thus, "so long as the officer has probable cause to believe that a traffic violation has occurred . . ., the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) *see also United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) ("[T]here is nothing 'unreasonable' about stopping a vehicle whose driver has just committed a traffic violation."). So long as the officer has probable cause, his or her subjective intent in conducting the traffic stop is irrelevant. *United States v. Blair*, 524 F.3d 740, 748 (2008); *see also Whren v. United States*, 517 U.S. 806, 813 (1996).

Ohio Revised Code § 4513.241 restricts the "use of tinted glass and other vision obscuring materials." This section prohibits "less than 50 percent (plus or minus 3 percent)" light transmittance. *State v. Baker*, 2010-Ohio-2633 (Ct. App.). "An officer reasonably suspects a window tint violation when he/she is familiar with the state's window tint law and 'estimate[s] that the vehicle [is] substantially darker than permitted by law.'" *United States v.*

5

*Plump,* 553 F. Supp. 3d 435, 441 (S.D. Ohio 2021) (citing *Shank,* 543 F.3d at 313 (2008)). Here, the evidence indicates that Officers Frost and McGee were familiar with Ohio's window tint law. The Officer Frost's report states that the "traffic stop was conducted for illegal window tint…" (ECF No. 37, Exhibit A, at 5). The citation issued to Defendant supports this report. (ECF No. 37, Exhibit F, at 2). Additionally, body worn footage reveals that Officer Frost informed Defendant the reason for the stop was "[y]ou don't have any working brake lights and then your window tint is extremely dark." (ECF No. 37, Exhibit B1, at 1:00). The evidence confirms Officers Frost and McGee were familiar with Ohio's window tint law.

The evidence also supports the government's contention that Officers Frost and McGee did indeed estimate that Defendant's tint was substantially darker than permitted by law. (ECF No. 41, at 6). Footage from Officer Frost's cruiser confirms that Defendant drove within the officers' sightline, and that his windows were visible to them. (ECF No. 37, Exhibit C-1, at 00:30). The abnormal darkness of the vehicle's windows is visible on the same video. (*Id.*). Further, when Officer Frost eventually tested the window, he found a 17% tint, significantly under the legal limit. (ECF No. 37, Exhibit A, at 9). Finally, Defendant did not contest the $120 ticket. (ECF No. 41, Exhibit 1, at 3).

From all of this, it is apparent that the window tint was significantly darker than the legal limit and that the officers had a chance to estimate its tint before they initiated their stop. Thus, Officers Frost and McGee had the probable cause necessary to believe that a traffic violation occurred and to conduct a traffic stop. No violation of Defendant's constitutional or statutory rights occurred. Any other motivation the officers may have had to stop Defendant is irrelevant to this analysis. Whether they were, as Defendant argues, "communicating on their radio or phones with others—presumably, other law enforcement officers—concerning the traffic stop

and decisions regarding the seizure of evidence and filing of charges," does not change that conclusion. (ECF No. 37, at 4). Defendant's motion is **DENIED** as to the initial traffic stop and subsequent search.

### b. Search Warrant

Defendant maintains that suppression of all evidence gleaned from the search of his eleven phones is warranted because "[t]he Whitehall police affidavit in support of the March 22, 2022 Ohio state search warrant was conclusory and devoid of any reliable information." (ECF No. 37, at 1). He states that "the only fact submitted to Judge Thomas" in support of the affidavit "was a bare, conclusory statement without any information about the reliability and veracity of its sources" from Detective Slosser. (*Id*., at 13). Thus, Defendant argues, the government lacked probable cause to support the warrant's issuance. (ECF No. 37, at 1). The government contests this, arguing that the warrant application contained more than just a single conclusory statement. (ECF No, 41 at 10–13). The Court concurs with the government.

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Dalia v. United States*, 441 U.S. 238, 255, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979). To establish probable cause, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "[T]he affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Smith*, 182 F.3d 473, 477

(6th Cir. 1999) (citing *Whiteley v. Warden*, 401 U.S. 560, 564, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971)).

A Judge's determination that probable cause exists to support a warrant is entitled to "great deference." *Gates*, 462 U.S. at 236; *accord United States v. Allen*, 211 F.3d 970, 973 (6th Cir.2000). "[A] hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth Amendment right such an approach would seek to protect." *Id*. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238-39. "In making this determination, the Court considers only the information that was before the issuing judge-in other words, only what is contained within the four corners of the supporting affidavit." *United States v. Downsbrough,* No. 3:13-CR-61, 2013 U.S. Dist. LEXIS 153273, 2013 WL 5781570, at *8 (E.D. Tenn. Oct. 24, 2013) (citing *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973)). Reviewing courts, like this one, must "read the affidavit reasonably . . . holistically, examining the totality of the circumstances and employing a healthy dose of common sense."

Reading the affidavit holistically, the Court concludes that the Judge Jodi L. Thomas had a substantial basis to conclude that probable cause to search Defendant's phone existed. Despite Defendant's contention, the affidavit submitted to Judge Thomas contained more than just "a bare, conclusory statement without any information about the reliability and veracity of its sources." (ECF No. 37, at 13). Detective Slosser's supporting affidavit is below:

**"The facts upon which such belief is based are as follows:**

8

Det. J. Slosser #79 being duly sworn deposes and says: I am currently employed by the Whitehall Police Department and have been so employed for t e past 12 years. My current assignment is Detective and I investigate narcotics, weapons, and other felony cri es. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other officers and witnesses. This affidavit is intended to show merely that there is sufficient obable cause for the requested warrant and does not set forth all of my knowledge about this investigation. The Whitehall Police Department is conducting a criminal investigation regarding Trafficking and/or Possession of drugs and weapons offenses. On March 15, 2022, Officers with the Whitehall Police Department conducted a traffic stop on a grey Chevrolet Malibu bearing Ohio temporary registration (N-684074) in the area of 1383 South Hamilton ad in Columbus, Ohio for traffic offenses. During the traffic stop, Officers identified the driver as Menelik SOLOMON. Your Affiant knows, through law enforcement sources, SOLOMON is directly associated with a large scale drug trafficking ring.  Upon making contact with SOLOMON, who was the sole occupant of the vehicle, officers smelled the odor of marijuana emanating from the vehicle SOLOMON was operating.  During the traffic stop officers discovered a total of 11 cellular phones. Seven of the 11 cellular phones were on SOLOMON' s person and the other four were located in the vehicle. Officers located a vacuum sealer, a package of rubber bands, a digital scale, a green substance believed to be marijuana residue, a .40 caliber handgun on SOLOMON's person and a 7.62x39mm Draco firearm underneath the driver's seat of the vehicle. It should be noted, Officers learned SOLOMON was in possession of a valid Concealed Carry permit through the state of Ohio. During the search, Officers located two large black trash bags within the trunk vehicle. Upon examining the trash bags, Officers discovered the trash bags had a white label on the exterior of the bags. One of the labels had e markings '2#' and '(57')' while the other trash bag had the markings '8#' and '(90).'

**The facts upon which such belief is based are as follows**:

Your Affiant knows, based upon training and experience, individuals involved in criminal activity, to include drug trafficking, will often use and possess multiple cellular devices in order to conduct their g trafficking activities. Your Affiant knows, based on training and experience, drug traffickers use and possess multiple cellular devices in order to hinder individuals, to include law enforcement, from obtaining the cellular device number in order to identify the user and possessor of the actual device. Drug traffickers will also possess multiple cellular devices to provide them with the ability to activate them on a random basis to avoid the association with the drug trafficker's illegal activity and the cellular device. These cellular phones are commonly referred to as 'burner phones' which are cellular phones that are possessed for short period of time then discarded. Drug traffickers will possess these 'burner phones' in case a cellular device, used for criminal activity, is compromised or the traffickers believes has been obtained by law enforcement. Drug traffickers will commonly use these cellular devices to communicate with sources of supply to arrange and o obtain the illicit controlled substance in which they are trafficking. Additionally, drug traffickers will use the

9

cellular devices to contact their customers who purchase the illicit controlled substances to arrange and complete the drug transactions. Your Affiant knows, based upon training and experience, drug traffickers will use vacuum sealer equipment to tightly seal and secure large quantities of illicit controlled substances as well as United States currency which are proceeds of their drug trafficking activities. Your Affiant knows, drug traffickers will use rubber bands in order to hold their drug trafficking proceeds together, at times, in stacks of various numerical counts. Your Affiant knows, based on training and experience, drug traffickers will use digital scales to weigh the drugs either being obtained from their source of supply or sold to their customers prior to the completion of the drug transaction. Finally, your Affiant knows based upon training and experience, drug traffickers will equip themselves with firearms as a form of protection due to their drug trafficking activities.

**The facts upon which such belief is based are as follows:**

Your Affiant believes, probable causes exists to conduct a search and forensic examination for the cellular device to obtain additional evidence of drug trafficking. Your Affiant believes the execution of the search could assist with the identification of SOLOMON' s source of supply, customer base for drugs or locations which drugs or drug proceeds are stored. Your Affiant requests delayed notification of the search tit the conclusion of the investigation. Since analysis of electronic device evidence may require several days from start to finish due to several factors, to include current technology of the time, it would be pragmatically impossible for law enforcement officers to comply with the three (3) day (72 hour) execution and associated return time limit of thew t. Therefore, a modification of the three (3) day (72 hour) time limit is requested. In Lieu of returning evidence/property obtained with this warrant, the affiant requests authorization to retain such evidence at the Whitehall Police Department headquarters."

(ECF No. 37, Exhibit D, at 6–8).

As the government argues, this affidavit contains much more than a bare bones conclusory statements. (ECF No. 41, at 10). Defendant challenges only one statement as conclusory. That being: "[y]our Affiant knows, through law enforcement sources, SOLOMON is directly associated with a large scale drug trafficking ring." (ECF No. 37, Exhibit D, at 6). However, read in its full context, this challenged statement is supported. Additionally, even if this statement is excised, the affidavit still sufficiently establishes the necessary probable cause to support a search.

Defendant is correct that the challenged statement, alone, is insufficient to establish probable cause to search his cellphones.  A statement is considered conclusory if it "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).  A single statement that the affiant learned Defendant was a drug dealer *from law enforcement sources*, with nothing more, would be conclusory.  However, here, Detective Slosser proceeded to state the basis for his conclusion.  The very next sentence of his affidavit provides a basis for how law enforcement sources could conclude that Defendant was a drug dealer.[3]  This evidence, put in proper context by Detective Slosser's training and experience, demonstrates that there is a fair probability of evidence of a crime on Defendant's cellphones.  As such, Judge Thomas had a substantial basis to grant the challenged warrant.

Further, even if this statement was excised from the affidavit, Judge Thomas would still have had a substantial basis on which to grant Detective Slosser's warrant application.   Detective Slosser's affidavit informed the court of the materials seized from Defendant during the March 15 traffic stop.  It also explained why Detective Slosser believed, based on his years of experience and training, these items were indicative of drug dealing.  Regarding the eleven seized cellphones, Detective Slosser stated "Drug traffickers will also possess multiple cellular devices to provide them with the ability to activate them on a random basis to avoid the association with the drug trafficker's illegal activity and the cellular device." (ECF No. 37, Exhibit D, at 7).  The detective also stated he "knows, based upon training and experience, drug

---

[3] "Upon making contact with SOLOMON, who was the sole occupant of the vehicle, officers smelled the odor of marijuana emanating from the vehicle SOLOMON was operating.  During the traffic stop officers discovered a total of 11 cellular phones. Seven of the 11 cellular phones were on SOLOMON' s person and the other four were located in the vehicle. Officers located a vacuum sealer, a package of rubber bands, a digital scale, a green substance believed to be marijuana residue, a .40 caliber handgun on SOLOMON's person and a 7.62x39mm Draco firearm underneath the driver's seat of the vehicle"

traffickers will use vacuum sealer equipment to tightly seal and secure large quantities of illicit controlled substances." (*Id*.). Additionally, he explained the significance of the seized rubber bands, scales, and firearms to drug trafficking. A holistic reading of this affidavit indicates there to be a substantial likelihood of evidence of a crime on Defendant's cellphones. The Court concludes Judge Thomas had a substantial basis to find probable cause to search the seized cellphones. Defendant's motion is **DENIED** as to the Search Warrant.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**. (ECF No. 37).

**IT IS SO ORDERED.**


**5/19/2023**                                        s/Edmund A. Sargus, Jr.
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                     **UNITED STATES DISTRICT JUDGE**